concurring in part and dissenting in part:
I agree with most of the majority opinion, including that the missing information from the final environmental impact statement (FEIS) and the Supplemental Environmental Impact Statement (SEIS) is not essential to informed decisionmaking at the lease sale stage, and that further environmental analysis will be more appropriate at a later stage. However, I do not agree that the Bureau of Ocean Energy Management, Regulation and Enforcement (BOEM) acted arbitrarily in selecting one billion barrels of oil as the benchmark for analyzing the environmental effects of the proposed leases.
I begin with a reminder that our review of the agency’s analysis of technical data is extremely limited. See Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir.2008) (en banc), overruled on other grounds as recognized by Am. Trucking Ass’ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009) (“Review under the arbitrary and capricious standard is narrow, and we do not substitute our judgment for that of the agency....”) (citation, alteration and internal quotation marks omitted). We should also keep in mind that the National Environmental Policy Act (NEPA) “does not mandate particular results.” Dep’t of Transp. v. Pub. Citizen, 541 U.S. 752, 756, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004). Rather, the statute “imposes only procedural requirements on federal agencies ...” Id. Under NEPA, “[w]e review an [Environmental Impact Statement] under a rule of reason to determine whether it contains a reasonably thorough discussion” of the potential environmental effects of a planned federal action. Edwardsen v. Department of the Interior, 268 F.3d 781, 784 (9th Cir.2001) (citation omitted).
The majority opinion takes issue with the agency’s selection of one billion barrels of oil as the benchmark amount for assessing potential environmental effects of the oil leases. However, our review is at its most deferential when we consider a predictive estimate such as BOEM’s estimate of the amount of oil recovery that should be included in the environmental effects analysis. See Lands Council, 537 F.3d at 993 (“[W]e are to conduct a particularly deferential review of an agency’s predictive judgments about areas that are within the agency’s field of discretion and expertise ... ”) (citations and internal quotation marks omitted). Our task is only to ensure that the agency has not:
relied on factors which Congress has not intended it to consider, entirely failed to consider an aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or an explanation that is so im *506 plausible that it could not be ascribed to a difference in view or the product of agency expertise.
Id. (citations, alteration, and internal quotation marks omitted).
The majority does not intimate that BOEM relied on factors Congress did not intend it to consider, or that BOEM entirely failed to consider an aspect of the problem. The majority opinion also cannot be fairly read to describe BOEM’s benchmark choice as so implausible that it could not be ascribed to a difference in view or the product of agency expertise. In fact, the majority opinion discusses the different views and agency expertise brought to bear on this issue. See Majority Opinion, pp. 499-502 (discussing the differing views from within and without the agency). So it appears that the basis for the majority’s ruling is that BOEM’s benchmark estimate runs counter to the evidence before the agency. But it doesn’t.
The potential size of commercially extractable oil deposits in the Chukchi Sea is a quintessential example of a predictive judgment uniquely within BOEM’s area of expertise. Indeed, we have previously recognized that “[pjrior to exploration, it is difficult to make so much as an educated guess as to the volume of oil likely to be produced ... Without this information, an oil spill risk analysis can never be more than speculative, regardless of what methodology is used....” Tribal Village of Akutan v. Hodel, 869 F.2d 1185, 1192 (9th Cir.1989), as amended.
It is beyond dispute that the Chukchi Sea contains oil deposits well in excess of one billion barrels. But that is not the point. The point is whether the selection of one billion barrels as the benchmark was the product of agency expertise. See Lands Council, 537 F.3d at 993. After considering the available evidence, BOEM concluded that substantial obstacles to oil development in the region made it unlikely that future production would “ever reach the full economic potential” in the Chukchi Sea. Five explorations had already tested some of the largest prospective sites without discovering a “commercial-size” oil source. With these circumstances in mind, BOEM ultimately selected one billion barrels as the benchmark estimate because lower oil volumes were not likely to be economically feasible. Rather than relying on general resource assessments as was done previously, BOEM opted for the more “realistic” benchmark tied to the discovery/development of the initial commercially viable offshore oil field. BOEM explained that the unique, remote, and previously unexplored nature of the Chukchi region required analysis of the “statistically most-likely development activity associated with a reasonable range of resources ... given the uncertainties of geology, engineering, and economics that exist now” and the “streamlined” environmental impact statement (EIS) undertaken at the leasing stage of the process. See Akutan, 869 F.2d at 1192 (‘We are the least troubled by what may seem to be incomplete or speculative data at the lease sale stage____”).
The majority is of the view that BOEM’s “analysis is flawed.” Majority Opinion, p. 502. But we do not sit as a panel of super scientists to dissect the agency’s analysis. Rather, we only review the process for reasonable thoroughness. See Edwardsen, 268 F.3d at 784 (establishing the role of the reviewing court to determine whether the agency’s environmental impact statement “contains a reasonably thorough discussion”). Not only was BOEM’s discussion of the selected benchmark “reasonably thorough,” id., its selection of the benchmark was within the *507 range of alternatives contained in the record. As the majority opinion acknowledges, a previous EIS had estimated a range of economical oil production from 0.96 billion barrels to 2.42 billion barrels. See Majority Opinion, pp. 500-01. One billion barrels is certainly within that range. The same is true for the “range between 1.0 and 6.1 billion barrels” referenced at page 502 of the Majority Opinion.
I readily acknowledge that there was disagreement in the scientific community concerning the selected benchmark. But disagreement does not render the chosen estimate irrational. Rather, it typifies the “difference in view” that we have established as a safe harbor against successful attack under NEPA. See Lands Council, 537 F.3d at 993. There is no such thing as a perfect estimate and BOEM was not required to adopt a different benchmark in the face of its critics. See Environmental Defense Center, Inc. y. EPA, 344 F.3d 832, 872 (9th Cir.2003) (“We defer to an agency decision not to invest the resources necessary to conduct the perfect study ... ”). BOEM explained its reasons for selecting its benchmark estimate, and we are uniquely unqualified to second-guess that selection. As the D.C. Circuit recognized in City of L.A. v. Dep’t of Transp., 165 F.3d 972, 977 (D.C.Cir.1999): “[That some or many [experts] would disapprove of [BOEM’s] approach does not answer the question presented to us. In reviewing [BOEM’s EIS], we do not sit as a panel of referees on a professional [scientific] journal, but as a panel of generalist judges obliged to defer to a reasonable judgment by an agency acting pursuant to congres-sionally delegated authority....”] (citations omitted).
Because of the deference due the agency, and because BOEM’s chosen benchmark was reasonably selected and adequately explained, our work here is done. We should afford BOEM’s EIS the deference due and affirm the district court’s order of dismissal.
I respectfully dissent.